Margaret E. Townsend (OSB # 144463)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
(971) 717-6409
mtownsend@biologicaldiversity.org

Lia Comerford (OSB #141513)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
(971) 717-6420
lcomerford@biologicaldiversity.org

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | Case No.: 3:26-cv-1165 |
| Plaintiff, | |
| v. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| U.S. FISH AND WILDLIFE SERVICE, BRIAN NESVIK, in his official capacity as Director of the U.S. Fish and Wildlife Service; DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior, | (Violation of the Endangered Species Act) |
| Defendants. | |

COMPLAINT

**INTRODUCTION**

1.      Plaintiff Center for Biological Diversity ("Center") challenges the failure of the U.S. Fish and Wildlife Service ("Service") to issue a timely listing decision (*i.e.* the "12-month finding") for the western ridged mussel (*Gonidea angulata*) in violation of the Endangered Species Act's ("ESA") nondiscretionary, congressionally mandated deadline. The Service's failure to meet the ESA's deadline to make a listing decision for the western ridged mussel delays lifesaving protections for the mussel, thereby increasing its risk of extinction.

2.      To remedy the Service's violation of the ESA, the Center asks the Court to declare the that the Service violated section 4(b)(6)(A) of the ESA, 16 U.S.C. § 1533(b)(6)(A), by failing to issue a timely listing decision for the western ridged mussel and direct the Service to issue the listing decision by a date certain.

**JURISDICTION AND VENUE**

3.      Plaintiff brings this action under the ESA, 16 U.S.C. §§ 1533, 1540(g), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

4.      This Court has jurisdiction to review this action under 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. §§ 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g), Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the APA, 5 U.S.C. § 706(2).

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (e), as a substantial part of the acts or omissions giving rise to the claims has occurred in this district, the western ridged mussel's range occurs within this District, the Service's Ecological Services Field Office listed as the contact for the listing decision for the western ridged mussel is located in

COMPLAINT                                    2

Portland, Oregon, the Service's Regional Headquarters is located in Portland, Oregon, and Plaintiff maintains a regional office in Portland, Oregon, all located within this District.

6. Pursuant to Local Rule 3-2, this case is properly filed in the Portland Division because a substantial part of the events or omissions giving rise to the claim occurred within the Portland Division, the western ridged mussel's range occurs in counties within the Portland Division, the Service's Ecological Services Field Office listed as the contact for the listing decision for the western ridged mussel is located in Portland, Oregon, the Service's Regional Headquarters is located in Portland, Oregon, and Plaintiff maintains a regional office in Portland, Oregon, all located within the Portland Division.

## PARTIES

7. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a nonprofit organization dedicated to the protection of imperiled species and their habitats. The Center is headquartered in Tucson, Arizona, and has offices and staff across the country, including an office in Portland and staff throughout Oregon. The Center has more than 101,000 members, including many who live near and recreate in Willamette River basin and have an interest in freshwater mussels including the western ridged mussel.

8. The Center brings this action on behalf of its members who derive ecological, recreational, aesthetic, educational, scientific, professional, moral, ethical, and other benefits from the western ridged mussel. The Center's members are deeply interested in and committed to the conservation of imperiled freshwater species, including the western ridged mussel, and to the effective implementation of the ESA to protect those species. The Center's members have studied, surveyed for, and observed western ridged mussels in the wild. Many of the Center's members live in and have specific intentions to continue to use and enjoy the watersheds known

COMPLAINT                                   3

to have documented and potential western ridged mussel habitat, including the rivers, streams, and surrounding areas within the current and historic habitat range for the western ridged mussel, frequently and on an ongoing basis in the future.

9.     The Center's members have been, are being, and will continue to be adversely harmed by the Service's failure to issue a timely listing decision for the western ridged mussel under the ESA. The injuries that the Center and its members have suffered are actual, concrete injuries, which are presently suffered by the Center and its members, and they will continue to occur unless this Court grants relief.

10.     For example, Center member Dr. Zee Searles Mazzacano is an entomologist and invertebrate ecologist with specialization in freshwater mussels, aquatic insects, crayfish, and other aquatic invertebrates. Dr. Mazzacano has conducted freshwater mussel surveys in numerous watersheds in central Oregon and Washington, including work with tribes, nonprofit organizations, watershed councils, Portland Metro, and other natural resource agencies. During one such survey in 2018 assessing a large freshwater mussel bed in Eugene, Oregon, Dr. Mazzacano first encountered a western ridged mussel in the wild—the mussel was found among thousands of western pearlshell mussels in stable gravel-bar habitat that is characteristic of ideal western ridged mussel habitat. Both professionally and personally, Dr. Mazzacano regularly visits rivers and streams that are historically known or potential habitat for the western ridged mussel, including the Willamette and Santiam Rivers in Oregon, and is an avid kayaker and river user who visits these and other freshwater systems regularly during the summer and early fall each year. Dr. Mazzacano plans to return to these locations multiple times this summer and early fall. The continued existence of the western ridged mussel is directly tied to Dr. Mazzacano's work such that, if the species were lost or extirpated, Dr. Mazzacano would lose the ability to

COMPLAINT                                4

survey for it, study it, and develop conservation strategies, and it would also reduce available contract work related to mussel surveys, monitoring, and conservation.

11.    Another Center member, Robert Derber, has personal, recreational, aesthetic, and moral interests in the western ridged mussel. Mr. Derber has devoted substantial time and effort studying and learning about freshwater mussels, their biology, and their role in river ecosystems, particularly the western ridged mussel. Mr. Derber's interest in freshwater mussels has, over the years, led him to attend scientific presentations, read peer-reviewed and gray literature, and study the biological structure, life cycle, and ecological role of freshwater mussels. He has been a member of the Freshwater Mollusk Conservation Society since 2022, and a member of the Pacific Northwest Native Freshwater Mussel Workgroup since 2023, during which time he has corresponded with numerous scientists, conservation practitioners, and tribal experts working on freshwater mussel research and restoration. In 2023, 2024, and 2025, Mr. Derber traveled to the Tualatin River in Oregon, which is known and potential western ridged mussel habitat, with the specific goal of locating western ridged mussels and other freshwater mussel species. In addition to field observations, Mr. Derber actively initiated and supported scientific analysis to determine mussel presence in the Tualatin River through environmental DNA ("eDNA") methods, contacting individuals and organizations conducting eDNA studies to obtain laboratory findings related to freshwater mussels, including western ridged mussels. Mr. Derber plans to visit the upper reaches of the Tualatin River to observe western ridged mussel habitat and attempt to locate the species before the end of 2026 and again in early 2027. Loss of the western ridged mussel harms Mr. Derber's personal, recreational, aesthetic, and moral interests by diminishing his ability to observe, study, and enjoy the western ridged mussel in the wild and by increasing the likelihood that the species will disappear from rivers Mr. Derber visits and cares about.

COMPLAINT                                5

12.     The Service's failure to issue a timely listing decision for the western ridged mussel under the ESA leaves the mussel vulnerable to further declines and the ongoing loss and degradation of habitat that is critical for its survival and recovery. The relief sought herein—including an Order directing the Service to issue a listing decision by a date certain—would redress those harms. The Center and its members have no other adequate remedy at law.

13.     The U.S. FISH AND WILDLIFE SERVICE is a federal agency within the U.S. Department of the Interior. The Secretary of the Interior has delegated to the Service the authority to conserve non-marine endangered and threatened species under the ESA. 50 C.F.R. § 402.01(b). This authority encompasses proposed and final listing determinations for the western ridged mussel.

14.     Defendant BRIAN NESVIK is the Director of the U.S. Fish and Wildlife Service and is charged with ensuring agency decisions comply with the law. The Center sues Defendant Nesvik in his official capacity.

15.     Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior ("Secretary") and has the ultimate responsibility to administer and implement the provisions of the ESA regarding the western ridged mussel and to comply with all other applicable federal laws. The Center sues Defendant Burgum in his official capacity.

## STATEMENT OF LAW

I.      <u>Endangered Species Act</u>

16.     The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are to provide "a means whereby the ecosystems upon which

endangered species and threatened species depend may be conserved" and "a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

17.    The Act directs the Secretary of the Interior, through the Service, to determine which species of plants and animals are "endangered" and "threatened" and place them on the list of protected species—otherwise known as "listing" a species. *Id.* § 1533.

18.    The Secretary has delegated its administration of the Act to the Service for freshwater aquatic species, including the western ridged mussel. 50 C.F.R. § 402.01(b). ESA Section 4 requires the Service to protect imperiled species by listing them as "endangered" or "threatened." 16 U.S.C. § 1533(a)(1). A species is "endangered" when it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

19.    The Act defines "species" to include "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16).

20.    The ESA requires the Service to determine whether any species is endangered or threatened because of any one of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

21.    The Service must list a species if the species meets the definition of "endangered" or "threatened" due to "any one or a combination of" these five listing factors. 50 C.F.R. § 424.11(c); *see* 16 U.S.C. § 1533(a)(1).

COMPLAINT                                        7

22.     If the Service determines that the species is not endangered throughout all its range, the ESA requires the agency to examine whether it is endangered or threatened throughout any "significant portion" of its range. *Id.* §§ 1532(6), (20).

23.     The Service must make listing determinations "solely on the basis of the best scientific and commercial data available," *id.* § 1533(b)(1)(A), and may not allow for "economic considerations" when making "determinations regarding the status of species." H.R. Rep. No. 97-835, at 20 (1982).

24.     The ESA allows any interested person to formally petition the Service to list a species as endangered or threatened. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a).

25.     To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby interested persons may petition the Service to list a species as endangered or threatened. 16 U.S.C. § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines.

26.     First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding."

27.     If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected, and the process concludes.

28.     If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

COMPLAINT                                                8

29. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

30. If the Service determines in its 12-month finding that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and to designate critical habitat for the species. *Id.* § 1533(a)(3)(A), (b)(3)(B)(ii). Within one year of publishing the proposed listing rule, the Service must publish the final rule in the Federal Register, implementing its determination to list the species and designate critical habitat. *Id.* § 1533(b)(6)(A).

31. If the Service instead determines in its 12-month finding that listing the species is "not warranted," the process concludes, and that finding is a final agency action subject to judicial review. *Id.* § 1533(b)(3)(C)(ii).

32. A species does not receive substantive protections under the Act until it is listed as endangered or threatened. Without these protections, endangered and threatened species continue to decline toward extinction and become more difficult to protect from the threat of extinction as their situations become even more dire.

33. Once a species is listed, the Act provides both procedural and substantive protections to ensure not only the species' continued survival, but also its ultimate recovery. For example, Section 4(a)(3) of the Act requires the Service to designate areas that are "essential to the conservation of the species" as "critical habitat," and to develop and implement recovery plans. *Id.* §§ 1533(a)(3), (f); 1532(5). In addition, Section 7(a)(2) of the Act requires all federal

COMPLAINT                                   9

agencies to consult with the Service to ensure their actions do not "jeopardize the continued existence" of listed species or "result in the destruction or adverse modification" of their critical habitat. *Id.* § 1536(a)(2). ESA Section 9(a)(1)(B) makes it unlawful to "take" any endangered species, which means no person can "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" an endangered species without first receiving authorization from the Service. *Id.* §§ 1532(19), 1538. Thus, listing is the crucial first step in the ESA's system of species conservation and recovery.

## STATEMENT OF FACTS

### I. The Western Ridged Mussel

34.     The western ridged mussel (*Gonidea angulata*) is a bivalve mollusk that is evolutionarily unique among the United States' freshwater mussels. The sole member of its genus, the western ridged mussel is known for its distinctive shell structure, which can be identified by a prominent, angular ridge running from the beak (near the hinge) to the posterior edge of the shell. Western ridged mussels are also unique because, unlike other mussels that live on the top of stream substrates, the western ridged mussel can remain nearly completely buried in mud or sand in cold streams for years. Western ridged mussels are very slow growing, with lifespans typically lasting upwards of 60 years or more.

35.     The western ridged mussel is an important indicator species for the health of rivers and freshwater ecosystems because it is highly sensitive to environmental changes (water quality, temperature, flow).

36.     This mussel also serves important functions for river health because, like other mussels, it is a filter feeder, filtering bacteria, fungal spores, algae, phytoplankton, and zooplankton, as well as chemicals, pharmaceuticals, personal care products, herbicides, flame

COMPLAINT                                    10

retardants, and *E. coli* from the water. In high densities, collectively these mussels can filter a substantial quantity of water, increasing water clarity for salmonids and other fishes.

37.    Like other freshwater mussels, western ridged mussels can only reproduce by relying on fish as essential, temporary hosts for their parasitic larvae (glochidia) to develop upon, disperse to new habitats, and mature. Female western ridged mussels package their larvae into packets called conglutinates and release them into streams, where fish misidentify them as food. When the fish consume the conglutinates the packets burst open, releasing larvae that attach to fish gills or fins, forming cysts before dropping off as juveniles. Host fish favored by the western ridged mussel include hardhead (*Mylopharodon conocephalus*), pit sculpin (*Cottus pitensis*), tule perch (*Hysterocarpus traski*), and margined and shorthead sculpin.

38.    The western ridged mussel's range once spanned from San Diego County, California, north to the Okanogan basin in the United States and into Canada. Today, the mussel's distribution has been diminished and fractured. A 2017 study by Blevins et al. found that the mussel had been lost from 43 percent of its historical distribution and that the southern extent of the range had contracted northward approximately 475 miles to rivers north of San Francisco Bay, California. Further, this study found that western ridged mussels were not detected at 46 percent of the 87 sites visited where it historically occurred.

39.    Multiple threats have caused or contributed to the western ridged mussel's decline. The mussel's freshwater habitat has been destroyed and modified in many ways— dissected by dams, harmed by activities that alter shoreline or channel habitat such as those associated with urban and agricultural development, and further degraded by stream channelization and sedimentation.

COMPLAINT                                11

40.    These and other human activities have diminished water quantity and quality, altered the natural flow of rivers, reduced connectivity between habitat areas, and led to the proliferation of aquatic invasive species such as zebra and quagga mussels.

41.    Western ridged mussel die-offs have been documented across the species' range in Oregon, Washington, and Idaho, and these enigmatic die-offs throughout western waters, likely the result of localized diseases, have reduced western ridged mussel populations and pose an ongoing threat to the mussel's continued existence.

42.    The effects of climate change will exacerbate the many threats to the western ridged mussel, its host fish, and home waterways.

## II.    The Petition to List the Western Ridged Mussel and Listing History

43.    On August 21, 2020, the Service received a petition from the Xerces Society requesting that the Service list the western ridged mussel as an endangered species and designate critical habitat.

44.    On July 27, 2021, the Service issued a positive 90-day finding that the petition presented "substantial scientific or commercial information indicating that the petitioned action[] may be warranted," and that the western ridged mussel may warrant endangered species listing due to habitat destruction, modification, and curtailment of range; impacts to water quantity, water quality, and natural flow and temperature regimes; aquatic invasive species (Factor A); and disease (Factor C). 86 Fed. Reg. 40186, 40188–89 (July 27, 2021).

45.    The Service also determined that the petition provided substantial information that the status of the western ridged mussel may warrant listing due to the inadequacy of existing regulatory mechanisms to ameliorate or reduce the existential threats to the mussel. *Id.*

COMPLAINT                                12

46.     The Service failed to issue the legally required "12-month finding" by August 21, 2021, to provide its determination about whether listing the western ridged mussel under the ESA is warranted.

47.     Plaintiff provided Defendants with 60-days' notice of their ESA violations, as required by 16 U.S.C. § 1540(g)(2)(C), by a letter dated March 17, 2026. Defendants have not remedied the ESA violations set out in Plaintiff's notice letter, and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CLAIM FOR RELIEF

### *Violation of the ESA in Failing to Publish a Timely Listing Decision for the Western Ridged Mussel*

48.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

49.     The ESA requires the Service to publish a 12-month finding within 12 months of receiving a petition to list a species under the Act, when the Service has made a 90-day finding that listing may be warranted. 16 U.S.C. § 1533(b)(3)(B).

50.     In response to the August 21, 2020, petition to list the western ridged mussel, the Service published a positive 90-day finding for the mussel on July 27, 2021. Therefore, the 12-month finding on the petition to list the western ridged mussel was due August 21, 2021, one year after the Service received the petition.

51.     Defendants have not made the statutorily required 12-month finding for the western ridged mussel.

52.     Defendants failed to perform their nondiscretionary duty to timely issue the listing decision in violation of the ESA. 16 U.S.C. § 1533(b)(6)(A).

COMPLAINT                                13

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

1.      Declare that Defendants violated the ESA by failing to issue a timely 12-month finding in response to the petition to list the western ridged mussel under the ESA;

2.      Provide injunctive relief compelling Defendants to issue the 12-month finding for the western ridged mussel by a date certain;

3.      Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4.      Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5.      Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted and dated this 9th day of June 2026.

/s/ Margaret E. Townsend
Margaret E. Townsend (OSB # 144463)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
(971) 717-6409
mtownsend@biologicaldiversity.org

Lia Comerford (OSB #141513)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
(971) 717-6420
lcomerford@biologicaldiversity.org

*Attorneys for Plaintiffs*

COMPLAINT                          14